ESTHER M. HENLEY                                                PLAINTIFF

v.                              CIVIL NO. 04-3058

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Esther M. Henley brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on December 5, 2002, alleging an inability to work since July 24, 2002, due to back and knee pain, diabetes, hypertension, depression, anxiety and carpal tunnel syndrome. (Tr. 112-114). An administrative hearing was held on October 24, 2003. (Tr. 26-84). Plaintiff was present and represented by counsel.

By written decision dated March 11, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 20). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of

severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform medium level work limited only by occasionally fingering with both hands. (Tr. 20). From a mental standpoint, the ALJ found plaintiff is only limited by incidental contact with the general public and can perform simple one to two step tasks. (Tr. 20). With the help of vocational expert testimony, the ALJ found plaintiff could perform her past relevant work as a housekeeper. (Tr. 20).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision was denied on July 20, 2004. (Tr. 5-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file an appeal brief; however, only defendant chose to do so. (Doc. # 7).

**Evidence Presented:**

At the administrative hearing before the ALJ on October 24, 2003, plaintiff was forty-three years of age and had obtained an eleventh grade education. (Tr. 33). The record reflects plaintiff's past relevant work consists of work as a housekeeper, a certified nurse's assistant and a home health aide. Plaintiff testified that she maintains a driver's license and drives. (Tr. 40, 64).

Plaintiff testified she experiences headaches every morning and that her vision is blurred. (Tr. 42). She also has pain in her neck, elbows, hands, shoulder, lower back, hip, and knees. Plaintiff testified that her hands and feet were numb "a lot." (Tr. 42, 47-49). Plaintiff testified that she also has diabetes which is controlled with medication approximately three days out of

the week. (Tr. 44). Her blood pressure causes her to be shaky in the knees and to have hot flashes. (Tr. 45). Plaintiff testified that she has carpal tunnel syndrome in both hands and is unable to hold anything. (Tr. 45-46). When she is hurting, plaintiff testified that she can not think straight. (Tr. 49). She also reported experiencing panic attacks. (Tr. 56-57).

Plaintiff testified that she continued to smoke. (Tr. 43). She further testified that she takes medication every day which causes her to be sleepy. (Tr. 55).

With regard to activities, plaintiff testified that she goes to the convenience store with her cousin. (Tr. 59). She reported that the older children use the bus to get to school and that she takes her cousin's youngest child to daycare because she can no longer watch her. (Tr. 59-60). Plaintiff testified that she could sit about two hours and stand and walk for about an hour. (Tr. 61-62). Plaintiff testified she could lift less than ten pounds and would not be able to do that in a regular work situation. (Tr. 62).

Ms. Janice Michaels, plaintiff's cousin, testified plaintiff is no longer capable of keeping up with the housework and seems to be depressed. (Tr. 67).

Mr. John Massey, a vocational expert, testified plaintiff's past relevant work consists of work as a housekeeper which is considered light, unskilled work; a certified nurse assistant which is considered medium, unskilled work; and a home health aide which is considered medium, semi-skilled work. (Tr. 74). After listening to the ALJ's hypothetical question, Mr. Massey testified that the hypothetical individual would be able to perform her past work as a housekeeper. If the assessments completed by Dr. Smith and Dr. Hodges' were accepted as true, Mr. Massey testified the hypothetical individual would not be able to perform work.

3

The pertinent medical evidence in this case reflects the following. On February 11, 2002, Dr. Michael E. Hodges' noted plaintiff presented to his office to establish a primary care physician. (Tr. 221). Plaintiff was concerned that she might have head lice. With the exception of hypertension, plaintiff reported she had no other medical problems. Plaintiff reported that she smoked one to two packages of cigarettes a day. Dr. Hodges' diagnosed plaintiff with hypertension, head lice and tobacco addiction.

In progress notes dated February 27, 2002, Dr. Hodges' noted plaintiff's report that she had a history of hyperthyroidism and that she had been out of her medication for some time. (Tr. 220). Plaintiff reported some weight gain, dry skin, some hair loss and fatigue. Dr. Hodges' diagnosed plaintiff with hypothyroidism and stable hypertension.

On March 14, 2002, plaintiff reported a cough, head congestion, sore throat and right ear pain. (Tr. 219). Plaintiff was diagnosed with Bronchitis, eustachian tube dysfunction and reactive airway. Plaintiff was given a Z-Pak and Parmist DM. Dr. Hodges' recommended plaintiff stop smoking. Plaintiff was to return to his office on an as needed basis.

Progress notes dated April 12, 2002, report plaintiff had some intermittent palpitations since starting on Synthroid. (Tr. 218). Plaintiff denied any other complaints but was concerned because she had taken fen-phen and wanted to have an echocardiogram to check her valves. Plaintiff reported having occasional shortness of breath. Dr. Hodges' noted plaintiff had lost ten pounds since her previous visit and that she continued to smoke.

Progress notes dated April 30, 2002, report plaintiff's complaints of numerous muscular-type body aches. (Tr. 217). Plaintiff reported she recently went to work as a housekeeper and had been doing a lot of manual labor. Dr. Hodges' noted plaintiff's echocardiogram showed a

4

slight mitral valve regurgitation. He noted plaintiff had mild tenderness to palpation of numerous muscular areas of the back, neck, shoulders and bilateral legs. Dr. Hodges' assessment states "multiple myalgias secondary to returning to work and previously sedentary lifestyle" and obesity. Plaintiff was started on Celebrex, instructed to exercise and to alternate the use of heat and ice to painful areas. Dr. Hodges' encouraged weight loss and a proper diet and told plaintiff to return as needed.

Progress notes dated June 7, 2002, report diet and exercise were discussed with plaintiff. (Tr. 216). After examining plaintiff, Dr. Hodges' diagnosed plaintiff with hypertension with some evidence of hypertensive heart disease and hypothyroidism. A tobacco cessation program was discussed with plaintiff and she was instructed to watch her diet and to exercise.

Progress notes dated July 19, 2002, report plaintiff's complaints of a recurrence of her arthritis and arthalgias. (Tr. 214). Plaintiff had been taking Celebrex with good results but did report some pain in her knees and neck since running out of Celebrex. Upon examination, Dr. Hodges' noted plaintiff had pretty good range of motion in her knees, hips and ankles.

Progress notes dated September 6, 2002, report plaintiff's complaints of insomnia and depression with occasional crying spells. (Tr. 213). Dr. Hodges' noted plaintiff had in the past taken doxepin for depression and that she was taking medication for her hypothyroidism and hypertension. Plaintiff denied any other complaints. Plaintiff was started on a trial of Elavil.

Progress notes dated October 25, 2002, report plaintiff's complaints of chest pain on exertion. (Tr. 212). Plaintiff reported some relief of her insomnia with the use of Elavil. After reviewing lab work, Dr. Hodges' diagnosed plaintiff with diabetes. Plaintiff reported that she continued to smoke one-half package of cigarettes a day. Dr. Hodges' started plaintiff on

5

Amaryl, prescribed a glucometer, recommended she follow a 2000-calorie ADA diet and stop smoking. Plaintiff was also scheduled to undergo a stress test with Dr. Camp.

Progress notes dated November 13, 2002, report plaintiff's complaints of anxiety, insomnia and depression. (Tr. 210). Plaintiff reported she had stopped taking Elavil. Plaintiff also complained of pain in her legs and feet. Stress tests results were negative. Dr. Hodges' discontinued plaintiff's use of Elavil and started her on Lexapro. He also "strongly recommended" plaintiff start an exercise program to assist her with weight loss efforts.

On December 4, 2002, plaintiff presented for a diabetes recheck. (Tr. 209). Dr. Hodges' noted plaintiff's blood sugar had been under much better control while taking Amaryl. Plaintiff reported that she had some insomnia that actually improved with the use of Lexapro. She also reported a "crick" in her neck for the past week. Plaintiff had no other complaints and reported she was working on her diet.

On December 17, 2002, plaintiff complained of pain in her neck and the trapezius area. (Tr. 208). Plaintiff denied any paresthesias of the upper extremities or radiation of pain. Upon examination, the examiner noted plaintiff's tenderness along the right trapezius muscle in the proximtiy of the neck. There was no spinal tenderness. Range of motion was painful as was rotation toward the right shoulder. Plaintiff had good sensation to the upper extremities and DTRs (deep tendon reflex) were intact. Plaintiff had a full grip strength. Plaintiff was sent to the hospital to undergo cervical spine x-rays and she was given Bextra and Flexeril. She was also given Theraband exercises.

Cervical spine x-rays taken on December 17, 2002, revealed mild degenerative changes at C6. (Tr. 279). On December 23, 2002, plaintiff underwent a MRI of the cervical spine which

revealed mild degenerative disc changes from C3-C4 through C6-C7; some mild posterior spurring at C3-C4 through C5-C6; slight kyphosis of the cervical spine; a slight indentation of the anterior spinal cord; and some spinal stenosis. (Tr. 278).

On January 6, 2003, plaintiff reported a nonproductive cough, chills, headache and a sore throat. (Tr. 207). Plaintiff was diagnosed with bronchitis and was given a Zithromax pack and Pancof.

On January 10, 2003, Dr. Steve Owens, a non-examining, medical consultant, completed a RFC assessment stating that plaintiff, could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that no postural, manipulative, visual, communicative or environmental limitations were evident. (Tr. 230-237).

On January 20, 2003, plaintiff presented for a diabetes check and complained of arthritic pain in her neck, back, knees, hips and ankles. (Tr. 206). Dr. Hodges' noted plaintiff had lost thirty-five pounds over the last year. Dr. Hodges' noted plaintiff was requesting disability based on her arthritis, anxiety, hypertension and diabetes. Plaintiff requested medication for her anxiety and depression and wanted to know more about Paxil. Upon examination, Dr. Hodges' noted plaintiff had fairly good range of motion and her joints were not red, hot or swollen. Dr. Hodges' recommended plaintiff discontinue smoking.

On February 26, 2003, plaintiff reported pain and numbness in her feet. (Tr. 204). Plaintiff had tried Celebrex without relief. Dr. Hodges' assessment indicated Type 2 diabetes and suspect diabetic neuropathy.

AO72A
(Rev. 8/82)

On March 12, 2003, plaintiff presented for a check of her diabetes and arthralgias. (Tr. 203). Plaintiff was diagnosed with upper respiratory infection with sinusitis/bronchitis, arthalgias and diabetes. Plaintiff was given Bactrim and Bextra and was to return as needed.

On July 30, 2003, plaintiff underwent a nerve conduction study. (Tr. 255, 280). The study was consistent with bilateral carpal tunnel syndrome of moderate severity. The ulnar nerve was within normal limits.

Dr. Hodges' completed a mental RFC questionnaire on August 8, 2003, and stated that plaintiff suffered from major depression, hypertension, arthritis and diabetes mellitus. (Tr. 257-261). He stated that she had a "fair" response to the medication Paxil and that her mental condition exacerbated her experience of pain. (Tr. 257,260). Dr. Hodges' also indicated plaintiff was a malingerer. (Tr. 260).

On this same date, Dr. Hodges' also completed a physical RFC questionnaire. (Tr. 263-267). He opined plaintiff was able to lift/carry less than ten pounds occasionally and to sit/stand/walk for a total of less than two hours in an eight-hour workday. Dr. Hodges' opined plaintiff would need periods of walking, ability to shift positions at will and to take unscheduled breaks during an eight-hour workday. Dr. Hodges' indicated plaintiff was able to twist, stoop and crouch rarely and was restricted from climbing ladders and stairs. Dr. Hodges' opined plaintiff was a malingerer. (Tr. 263).

On August 18, 2003, plaintiff underwent a neuropsychological evaluation performed by Dr. Vann A. Smith. (Tr. 274-277). Dr. Smith stated that a mental status examination revealed plaintiff was cooperative, alert and oriented in all spheres with a somewhat muted but flexible affect. He noted plaintiff's mood was slightly anxious but that her judgment and insight were

intact. Plaintiff obtained a Full Scale IQ score of 92 on the Wechsler Adult Intelligence Scale-Revised. Dr. Smith found plaintiff's narratives to be marginally fluent but logical and informative and estimated plaintiff's intelligence was within the normal range. Dr. Smith reported plaintiff voiced no suicidal or homicidal ideation, intent, plan or impulse. Plaintiff's thought processes were functional with no evidence of hallucinatory or delusional phenomena. Dr. Smith concluded plaintiff's clinical history, mental status examination, and neuropsychodiagnostic test data were compatible with a diagnosis of mild, diffuse, bilateral organic brain dysfunction. Dr. Smith opined that resulting cognitive symptoms significantly interfered with her ability to carry out routine activities of daily living and rendered her disabled. Dr. Smith determined plaintiff was unable to meet competitive standards with regard to work-related activities which included the ability to maintain regular attendance and be punctual within customary, usually strict tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to understand, remember and carry out detailed instructions and to deal with stress of semi-skilled and skilled work. (Tr. 269-273). Dr. Smith opined plaintiff was no a malinger. (Tr. 272).

Mr. James Schmidt, D.C., completed a RFC questionnaire on October 31, 2003, and stated that the claimant had a diagnosis of thoracic sprain/strain and a guarded prognosis. (Tr. 281-285). He stated that she as able to lift less than ten pounds frequently and sit/stand/walk for a total of less than two hours in an eight-hour workday. He stated plaintiff was able to use her hands/fingers/arms for repetitive activities only ten percent of the time during an eight-hour workday.

9

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

AO72A
(Rev. 8/82)

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges disabling neck, back and knee pain that started prior to her alleged onset of disability in April of 2002, when she went to work as a housekeeper. (Tr. 217). Plaintiff was started on Celebrex and in July of 2002, plaintiff reported good results. We note, an impairment which can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted). At that time, Dr. Hodges' reported plaintiff had pretty good range of motion in her knees, hips and ankles. After complaining of neck and right trapezius pain in December of 2002, plaintiff underwent cervical spine x-rays revealing mild degenerative changes at C6. (Tr. 279). On December 23, 2002, plaintiff underwent a MRI of the cervical spine which revealed mild degenerative disc changes from C3-C4 through C6-C7; some mild posterior spurring at C3-C4 through C5-C6; slight kyphosis of the cervical spine; a slight indentation of the anterior spinal cord; and some spinal stenosis. (Tr. 278). In January of 2003, Dr. Hodges' noted plaintiff had fairly good range of motion and that her joints were not red, hot or swollen. Plaintiff was prescribed Bextra and instructed to return on an as needed basis. While plaintiff may experience some degree of pain, the medical evidence indicates that her condition is not of a disabling nature. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

12

The record reveals plaintiff has been diagnosed with diabetes and did report numbness in her feet in February of 2003, however a review of the medical shows this was a one-time complaint to Dr. Hodges' who suspected that this might be due to diabetic neuropathy. However, plaintiff did not seek treatment for this problem again and Dr. Hodges' did not diagnose plaintiff with neuropathy or recommended further testing. The record shows plaintiff's blood sugars were controlled well with medication. *See Estes v. Barnhart,* 275 F.3d 722 at 725. Therefore based on the current record before this court, we find substantial evidence supporting the ALJ's determination that plaintiff does not have disabling diabetes.

Plaintiff also alleges that she has disabling bilateral carpal tunnel syndrome. In December of 2002, Dr. Hodges' noted plaintiff had full grip strength. She did undergo nerve conduction velocity testing in July of 2003. The study was consistent with bilateral carpal tunnel syndrome of moderate severity. The ulnar nerve was within normal limits. While plaintiff may indeed experience some pain due to carpal tunnel syndrome, we find substantial evidence supporting the ALJ's determination that this impairment is not disabling.

With regard to plaintiff's alleged problems with depression and anxiety, the ALJ noted Dr. Hodges' had prescribed medication to plaintiff to treat her depression and that Elavil and Lexapro improved her symptoms. The ALJ also noted Dr. Smith's findings indicating that plaintiff had mild organic brain syndrome. The ALJ pointed out that plaintiff had never sought treatment from a mental health professional. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). The ALJ

13

went on to find that plaintiff had no impairments with regard to daily living activities; and moderate difficulties in maintaining social functioning and concentration persistence and pace. We find substantial evidence of record supporting the ALJ's determination.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. In contrast to plaintiff's testimony at the hearing before the ALJ indicating that she could do very little, in a Supplemental Interview Outline dated December 12, 2002, plaintiff indicated that she could take care of her personal needs; could, with breaks, do laundry, wash dishes, change sheets, iron, vacuum/sweep and take out the trash; could shop for groceries and clothing and go to the Post Office and the bank; could prepare meals and pay bills; could drive and walk for errands and exercise; and could watch television, listen to the radio, read and walk. (Tr. 151-155). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to her date last insured. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Further, the ALJ also considered the testimony of plaintiff's cousin. After hearing her testimony, however, the ALJ properly concluded that her testimony was not fully credible because she had an interest in the outcome of the case. As the testimony of family members and

14

friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

15

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ determined plaintiff retained the RFC to perform medium level work limited only by occasionally fingering with both hands. From a mental standpoint, the ALJ found plaintiff is only limited by incidental contact with the general public and can perform simple one to two step tasks. In making this determination, the ALJ considered a medical assessment prepared by a non-examining agency medical consultants, the medical statements completed by Drs. Hodges' and Smith, the assessment completed by Mr. Schmidt, D.C., plaintiff's subjective complaints, and her medical records.

With regard to Drs. Hodges' and Smith, the ALJ noted that their assessments are inconsistent with their treatment and examining notes. *Forehand v. Barnhart,* 364 F.3d 984, 986 (8th Cir.2004) ("A treating physician's opinion is generally entitled to substantial weight, ... [but it] must be supported by medically acceptable clinical or diagnostic data."); *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). The ALJ noted Dr. Hodges' notes indicate plaintiff had a normal range of motion in December of 2002, and fairly good motion in her joints in January of 2003, and that Dr. Smith found plaintiff oriented to time, place and person with flexible affect and intact judgment and insight. He further noted Dr. Smith found plaintiff had normal thought processes, normal intelligence and voiced no suicidal or homicidal ideation.

While there are no treatment notes from Mr. Schmidt to review, the ALJ noted the physical assessment completed by Mr. Schmidt and found that the evidence as a whole did not

AO72A
(Rev. 8/82)

support Mr. Schmidt's findings. We agree. Therefore, based on all of the evidence contained in the file, we see no reason why plaintiff would have been unable to perform the RFC determined by the ALJ

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as she was able to perform her past relevant work as a housekeeper. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of October 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)